IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

JESSIE GLADSON, individually, and in
her capacity as Personal Representative
of the Estate of Brad Stephen Abercrombie,
deceased                                                                                                          PLAINTIFF

VS.                                   NO. 4:08-cv-1783-JMM

PHIL MASK, individually, and in his official
capacity as Sheriff of Saline County, Arkansas;
BILL FIELDS, individually, and in his official
capacity as Chief Deputy of the Saline County
Sheriff's Department; SALINE COUNTY,
ARKANSAS; and the CITY OF BENTON,
ARKANSAS                                                                                                       DEFENDANTS

## BRIEF IN SUPPORT OF MOTION OF SEPARATE DEFENDANTS
## PHIL MASK AND BILL FIELD FOR SUMMARY JUDGMENT

### I. INTRODUCTION

Plaintiff has brought this action alleging a deprivation of substantive due process, a deprivation of equal protection of the laws, and a common-law tort action. Under any of those theories of liability, Defendants Mask and Field prevail and should be awarded judgment as a matter of law.

### II. FACTS

This is a sad case. On December 20, 2006, Steven Potter murdered Brad Abercrombie and Jessica Morgan, and then, moments later, took his own life. Jessica had picked up her boyfriend Brad from a working trip, and had just pulled into her driveway when Steven, Jessica's former husband, suddenly came onto the property and shot the couple. The criminal investigation revealed that he had been hiding nearby, and ambushed Jessica and Brad. His motive may have been jealousy, because

there is some evidence that Jessica may also have been seeing Steven, and that they had, in fact, spent the day together either on the day of the murder or the day before, and had gone Christmas shopping together.

Brad's mother, Jessie Gladson, filed this action pursuant to the provisions of 42 U.S.C. § 1983, alleging that then-Sheriff Phil Mask and Chief Deputy Bill Field violated Brad Abercrombie's constitutional rights by failing to protect Brad from harm by Steven. The Complaint alleges that sometime prior to the death of Brad and Jessica, Brad's stepfather, John Gladson, told Chief Deputy Bill Field that he was fearful that Steven might try to harm Brad, and Field responded that he would pass the information on. John Gladson also contends that he spoke to Mask and other officers, but this allegation is not supported by any credible evidence. The only other contact with the Saline County Sheriff's Office by either of Steven's victims was by Jessica. She and her mother told Alisha Vaughan, an intake officer at the Domestic Violence Unit, that Steven had violated an Order of Protection that Jessica had against him, but when Ms. Vaughan learned that the alleged violation had occurred in the city limits, she referred them to the Benton Police Department or Prosecuting Attorney. Brad's name was not mentioned as a potential victim in this report to Ms. Vaughan.

John Gladson also contends that shortly before his conversation with Chief Field, Brad told him that he (Brad) had contacted the Sheriff's Office. This contact is completely unsubstantiated.

In summary, the *only substantiated contact* on behalf of Brad was John Gladson's speaking to Chief Field. The only other contact by either of Steven's victims was Jessica and her mother speaking to Ms. Vaughan, and Brad was not mentioned.

### III. STANDARD OF REVIEW

Summary judgment is only appropriate "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The Court must view the facts, and inferences to be drawn from those facts, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). A moving party is entitled to summary judgment if the nonmoving party has failed to make a showing sufficient to establish the existence of an element essential to that party's case. *Celotex,* 477 U.S. at 322-3. The Eighth Circuit has held that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Dulany v. Carnahan,* 132 F.3d 1234, 1237 (8th Cir. 1997) [quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)].

## IV. SUBSTANTIVE DUE PROCESS

### a. Substantive Due Process defined

A plaintiff in litigation such as this must establish a violation of substantive due process by demonstrating that a fundamental right was violated, and that the conduct shocks the conscience . . . . whether the alleged conduct shocks the conscience is a question of law. *Akins v. Epperly*, 588 F.3d 1178, 1183 (8th Cir. 2009) [internal citations omitted]. "In a due process challenge to executive action, the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Id*. citing *County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998). See also *Collins v. Harker Heights*, 503 U.S. 115, 128 (1992).

With that framework, Plaintiff's substantive due process allegation is examined in detail.

### b. Defendants' alleged failure to provide Brad Abercrombie with adequate protection against Steven Potter's violence did not violate Abercrombie's rights under the substantive component of the Due Process Clause.

In *DeShaney v. Winnebago County Social Services Department*, 489 U.S. 189 (1989), a child was subjected to multiple beatings by his father, but the social workers for the respondent county Department of Social Services did not act to remove the child, even though they had received multiple complaints that the youngster had been abused. Although the Court recognized certain limited circumstances in which the Constitution imposes affirmative duties upon States, the Court, speaking through Chief Justice Rehnquist in a 6-3 decision, rejected a general requirement of protection, holding:

> Judges and lawyers, like other humans, are moved by natural sympathy in a case like this to find a way for Joshua and his mother to receive adequate compensation for the grievous harm inflicted upon them. But before yielding to that impulse, it is well to remember once again that the harm was inflicted not by the State of Wisconsin, but by Joshua's father. The most that can be said of the state functionaries in this case is that they stood by and did nothing when suspicious circumstances dictated a more active role for them. In defense of them it must also be said that had they moved too soon to take custody of the son away from the father, they would likely have been met with charges of improperly intruding into the parent-child relationship, charges based on the same Due Process Clause that forms the basis for the present charge of failure to provide adequate protection.

*Id.* at 202-3.

The *DeShaney* case involved multiple and severe injuries over a long period of time with multiple visits by and contacts with the State of Wisconsin.[1] However, in the present case, there was one single substantiated contact involving potential harm to Brad Abercrombie. *DeShaney* controls

---

[1] The youngster was, tragically, beaten so severely that he suffered permanent brain injury.

the outcome here.

### c. The conduct of Defendants did not constitute a state-created danger to Brad Abercrombie, and therefore, did not violate Abercrombie's rights under the substantive component of the Due Process Clause.

It is anticipated that Plaintiff will argue that the response of Chief Field was insufficient to protect Brad Abercrombie from harm, and therefore constituted a state-created danger as discussed in *Hart v. City of Little Rock, Arkansas,* 432 F.3d 801 ( 8th Cir. 2006). Under that theory, Plaintiff must prove: (1) Brad Abercrombie was a member of a limited, precisely definable group, (2) the Defendants' conduct put Abercrombie at significant risk of serious, immediate, and proximate harm, (3) the risk was obvious or known to Defendants, (4) the Defendants acted recklessly in conscious disregard of the risk, and (5) in total, Defendants' conduct shocks the conscience. *Id* at 805.

The proof fails miserably. First, Brad Abercrombie was not a member of a limited, precisely definable group. He was at best an individual of whom Steven Potter happened to be jealous, and with whom Steven Potter happened to be angry. Deposition of Mike Frost, pages 14-15, 55, Exhibit E. Second, the conduct of neither Defendant put Abercrombie at risk of immediate and proximate harm. In fact, this murder occurred weeks after the conversation between John Gladson and Chief Field. Deposition of John Gladson, page 6, Exhibit D. Third, neither Defendant had any knowledge of the risk involved with respect to Steven Potter. Fourth, neither Defendant acted recklessly in conscious disregard of the risk. Finally, their conduct hardly shocks the conscience.

The *Hart* Court also made it clear that "mere negligence can never be conscience-shocking and cannot support a claim alleging a violation of substantive due process rights." *Id*. [citing *Terry B. v. Gilkey*, 229 F.3d 680, 684 (8th Cir. 2000)] Finally, the Court made it clear that "[T]he

constitutional concept of conscience shocking duplicates no traditional category of common-law fault, but rather points clearly away from liability, or clearly toward it, only at the ends of the tort law's spectrum of culpability, . . . and liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." *Id*. [internal citations omitted] The actionable substantive due process claims involve a level of abuse of power so brutal and offensive that they do not comport with traditional ideas of fair play and decency." *Id*. at 806 [citing *Avalos v. City of Glenwood*, 382 F.3d 792, 800 (2004)].

All of this means that even if the Court is asked to second-guess whether Chief Field should have taken stronger action, or that former Sheriff Mask should have been more affirmative in his follow-up directive, or if either should have been more diligent in connecting dots to Ms. Vaughan's interview of a vague incident connected to the ultimate victim in this case, none of that is conscience-shocking. It is, at the very and absolute worst, unfortunate.

### V. THE CONDUCT OF DEFENDANTS DID NOT CONSTITUTE A DEPRIVATION OF BRAD ABERCROMBIE'S CONSTITUTIONAL RIGHT OF EQUAL PROTECTION OF THE LAWS.

In her Complaint, Plaintiff sets out a claim which can only be described as bizarre. She contends that Brad Abercrombie was denied his constitutional right of equal protection of the laws under the Fourteenth Amendment. As best as can be determined, the Plaintiff contends that Steven Potter was a confidential informant, and as such, was not scrutinized by law enforcement personnel to the extent that he would have been had he not been useful to law enforcement as a confidential informant. Accordingly, Brad Abercrombie fell victim to this unequal treatment. This claim is totally without merit.

First, it was established in the course of discovery that Steven Potter was not a confidential

informant. The only person in a position to know Steven Potter's status was Lieutenant Frost, the head of the Criminal Investigation Division of the Sheriff's Office. His testimony was given with absolute certainty on this point. Steven Potter was not a confidential informant. Deposition of Mike Frost, pages 26-27, Exhibit E.

But even if Steven Potter had been a confidential informant, the claim remains without merit. In *Ricketts v. City of Columbia, Missouri*, 36 F.3d 775 (8th Cir. 1994) [*See infra* p. 8], an equal-protection argument was made by Plaintiff, contending that the local police department was liable under 42 U.S.C. § 1983 because it did not take seriously domestic violence complaints, thereby causing the death of a mother and repeated rape of her daughter. The *Ricketts* case, which is more thoroughly discussed in the following section, squarely held that in order to create a fact question in such a claim, the Plaintiff must prove (1) that the Defendant maintained a policy or custom of providing less protection to victims threatened by violent individuals, and (2) that the policy or custom was the cause of Plaintiff's injuries—in this case, the death of Brad Abercrombie. *Ricketts* at page 779.

Steven Potter was not a confidential informant. There is no evidence to the contrary that he was. The Saline County Sheriff's office did not have a custom or policy of not arresting or subduing confidential informants. Even if there were such a custom or policy, it did not cause the death of Brad Abercrombie. This claim, bizarre and imaginative as it is, must fail.

### VI. THE ISSUE OF CAUSATION IN THIS LITIGATION INVITES "PURE SPECULATION."

The Plaintiff's theories of liability as against Mask and Field invites speculation: That if Steven Potter had been arrested at some point prior to December 20, 2006, the murder-suicide would

not have occurred.

This present case is remarkably similar to *Ricketts v. City of Columbia, Missouri*, 36 F.3d 775 (8th Cir. 1994). In that case, the Plaintiffs contended that law enforcement of the city of Columbia maintained a custom and practice of treating domestic abuse cases less seriously than nondomestic cases, and as a result, Kimberly Stephen's husband Sonny harassed and sexually assaulted Kimberly, and murdered her mother, Marge Ricketts. Kimberly had sought and obtained an order of protection. She and her five children had moved in with her parents, Paul and Marge. Sonny constantly and systematically harassed Kimberly, but Kimberly and Sonny moved back in together, only to separate again due to Sonny's abusive conduct. While she and her children were again living with her parents, Sonny entered their home with a shotgun and murdered Marge. He then dragged Kimberly to a nearby wooded area where he sexually assaulted her and then released her one and one-half hours later. Although Plaintiffs obtained verdicts for the murder of Marge and for sexual assault and harassment of Kimberly, the district court set the verdict aside. The Eighth Circuit Court of Appeals, in a decision by Judge Hansen, affirmed, holding:

> In the case at hand, to find that the injuries caused by Sonny's violent acts of sexual assault and murder would have been avoided had Sonny been arrested for the prior harassment would be an exercise in *pure speculation*. Such speculation cannot establish causation because it is equally plausible that an arrest for the prior harassment might as easily have spawned retaliatory violence from Sonny. [emphasis added]

*Id*. at 780.

This holding is equally applicable to the present case. A failure by Field and Mask to order the arrest of Steven Potter cannot be said to have caused the murder of Brad Abercrombie. And, using the logical extension suggested by Judge Hansen, it is equally plausible that such an arrest

might just as easily have spawned retaliatory violence by Steven Potter.

## VII. STEVEN POTTER'S MURDER OF BRAD ABERCROMBIE WAS AN INTERVENING CAUSE WITH REGARD TO THE CONDUCT OF DEFENDANTS.

The doctrine of intervening causation is referred to in the *DeShaney* case, and is specifically mentioned in the above quotation at page 4 of this brief: " . . . before yielding to that impulse, it is well to remember once again that the harm was inflicted not by the State of Wisconsin, but by Joshua's father." *DeShaney* at 203. Similarly, it is well to remember that the death of Brad Abercrombie was inflicted not by these Defendants, but by Steven Potter. These Defendants had no control over the conduct of Steven Potter. In fact, according to the official criminal investigation, Steven Potter and his former wife, Jessica Morgan, apparently had spent the day together, and had gone Christmas shopping immediately prior to the double murder and suicide. Deposition of Mike Frost, page16, Exhibit E.

Civil rights law under 42 U.S.C. § 1983 often intersects with tort law, and this case is an excellent example of where that intersection is appropriate. See, for example*, Crawford-el v. Britton*, 523 U.S. 574 (1998), and *Jefferson v. City of Tarrant*, 522 U.S. 75 (1997), as but two examples of scores of cases in the U.S. Supreme Court alone which describe an action under 42 U.S.C. § 1983 as a "constitutional tort." Arkansas tort law is instructive in this case: When an act or omission occurs after the allegedly actionable conduct of Defendants, and is completely independent of their conduct, the alleged actionable conduct of the Defendants does not constitute proximate causation. The familiar case of *Cowart v. Casey Jones, Contractor, Inc.,* 250 Ark. 881, 467 S.W.2d 710 (1971), teaches as much. In that case, the Court held that the actions of Plaintiff's decedents' employer in permitting operation of heavy equipment without safety devices was an intervening cause in the

death of Plaintiff's decedent. 250 Ark. at 885. The present case is similar. Regardless of any act or omission on the part of Defendants Mask and Field, and completely independent of any such act or omission, Steven Potter murdered Brad Abercrombie and Jessica Morgan, and then took his own life. His conduct constituted intervening causation.[2]

### VIII. DEFENDANTS MASK AND FIELD ARE NOT SUBJECT TO SUIT IN TORT.

Defendants Mask and Field are immune from lawsuits sounding in common-law tort. Ark. Code Ann. § 21-9-301 provides:

(a)  It is declared to be the public property of the State of Arkansas that all counties, municipal corporations, school districts, special improvement districts, and all other political subdivisions of the state and any of their boards, commissions, agencies, authorities, or other governing bodies shall be immune from liability and from suit for damages except to the extent that they may be covered by liability insurance.

(b)  No tort action shall lie against any such political subdivision because of the acts of its agents and employees.

County employees such as Field and Mask, standing in the shoes of the State,[3] are not subject to suit under the above provision. *Carlew v. Wright*, 356 Ark. 208, 216, 148 S.W.3d 237 (2004).

Also, the United States Supreme Court has spoken on this issue, at least with respect to negligence. In *Daniels v. Williams*, 474 U.S. 327 (1986), the Court, held that negligence is not actionable under 42 U.S.C. § 1983. *Id.* at 330-331. The Court's clear and unambiguous holding was that "the Due Process Clause is simply not implicated by a *negligent* act of an official causing

---

[2] The concept is sometimes referred to as superceding cause. *See generally,* HENRY WOODS AND BETH DEERE, COMPARATIVE FAULT 107 (3d ed. 1996).

[3] A County is a political subdivision of the State. *Dermott Special School District v. Johnson*, 434 Ark. 90, 95, 32 S.W.3d 477 (2000).

unintended loss of or injury to life, liberty, or property." [emphasis by the Court] *Id*. at 328. Further, in *Davidson v. Cannon*, 474 U.S. 344 (1986), a companion case decided the same day as *Daniels*, the Court reiterated the same principle. In *Davidson*, the Plaintiff-Petitioner, a prison inmate, gave authorities a note that he was being threatened by another inmate, and the note was passed on to other authorities, but nothing was done. Two days later, Plaintiff-Petitioner was attacked by the inmate, inflicting serious injuries. Suit was brought under 42 U.S.C. § 1983 alleging that prison officials had negligently failed to protect Plaintiff-Petitioner from the other inmate. The Court held that the protections afforded by the Due Process Clause of the Fourteenth Amendment are not triggered by lack of "due care" by prison officials. "Respondents' lack of due care in this case led to serious injury, but that lack of care simply does not approach the sort of abusive government conduct that the Due Process Clause was designed to prevent."[internal citations omitted] *Davidson* at 347-348. The Eighth Circuit has been rigorous in enforcing the *Daniels-Davidson* rule. See, for example, *Norman v. Schuetzle*, 585 F.3d 1097, 1104 (8th Cir. 2009).

For these reasons, the tort allegations of the complaint do not survive.

## IX. THIS ACTION IS BARRED BY THE DOCTRINE OF QUALIFIED IMMUNITY.

The historic case of *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), established the defense of qualified immunity in cases brought under 42 U.S.C. § 1983. Since that time, all of the federal circuits, including the Eighth Circuit, have developed case law closely following and implementing *Harlow*, which specifically holds that government officials "are shielded from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id*. at 818. Building on that, the Eighth Circuit

has developed a three-pronged test:

> To withstand the application of qualified immunity, a Plaintiff must (1) assert a violation of a constitutional or statutory right; (2) that right must have been clearly established at the time of the violation; and (3) given the facts most favorable to the Plaintiff, there must be no genuine issue of material fact as to whether a reasonable official would have known that the alleged action indeed violated that right.

*Liebe v. Norton*, 157 F.3d 574, 577 (8th Cir. 1998). See also *Gregoire v. Class*, 236 F.3d 413, 417 (2000); *Goff v. Bise*, 173 F.3d 1068, 1072 (1999); *Yowell v. Combs*, 89 F.3d 542, 544 (8th Cir. 1996). Plaintiff fails to meet the requirements of this three-pronged test.

First, the Plaintiff has failed to assert a violation of a constitutional right. *DeShaney v. Winnebago County Social Services Department*, 489 U.S. 189 (1989), makes it abundantly clear that there is no constitutional right to individual protection. *Id*. at 202-203.

Second, not only is there no such constitutional right, but it necessarily follows that such a right is not clearly established. Further, even if *Hart v. City of Little Rock, Arkansas,* 432 F.3d 801 ( 8th Cir. 2006), defines a new cause of action for creation of a dangerous condition, that cause of action is not clearly established. In fact, although that cause of action was first enunciated in *Hart*, the Plaintiffs lost. *Hart* has been cited in the Eighth Circuit only twice and the Plaintiffs also lost in those cases (both with dissimilar facts).[4]

Third, it necessarily follows also that if the complaint does not articulate a constitutional right (or if it does, it is not clearly established), then there can be no issue as to whether Chief Field or Sheriff Mask would have even known that their alleged action indeed violated such a right.

In summary, Plaintiff has not alleged a deprivation of a constitutional or statutory right, and

---

[4]*James ex rel. James v. Friend*, 458 F.3d 726 (8th Cir. 2006); *Skokos v. Rhoades*, 440 F.3d 957 (8th Cir. 2006).

even if she has, it is not one that was clearly established on December 20, 2006. It necessarily follows, therefore, that it is not unreasonable for these Defendants not to have known of a nonexistent or unestablished constitutional deprivation. For this reason alone, therefore, summary judgment should be granted to these Defendants.

## IX. CONCLUSION

For the foregoing reasons, these Defendants should be awarded summary judgment.

/s/ George D. Ellis
GEORGE D. ELLIS (ARK. BAR NO. 72035)
Attorney for Phil Mask and Bill Field
Ellis Law Firm, P.A.
P.O. Box 2307
Benton, Arkansas 72018
(501) 315-1000
(501) 315-4222 [fax]
*gellisinbenton@swbell.net*

## CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of April, 2010, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to all parties in interest.

/s/ George D. Ellis
GEORGE D. ELLIS