IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

JESSIE GLADSON, individually, and in
her capacity as Personal Representative
of the Estate of Brad Stephen Abercrombie,
deceased                                                                                                PLAINTIFF

VS.                                        NO. 4:08-cv-1783-JMM

PHIL MASK, individually, and in his official
capacity as Sheriff of Saline County, Arkansas;
BILL FIELDS, individually, and in his official
capacity as Chief Deputy of the Saline County
Sheriff's Department; SALINE COUNTY,
ARKANSAS; and the CITY OF BENTON,
ARKANSAS                                                                                              DEFENDANTS

### BRIEF IN SUPPORT OF MOTION OF SEPARATE DEFENDANT CITY OF BENTON, ARKANSAS FOR SUMMARY JUDGMENT

### I. INTRODUCTION

Plaintiff has brought this action alleging a deprivation of substantive due process, a deprivation of equal protection of the laws, and a common-law tort action. Under any of those theories of liability, the City should prevail and be awarded judgment as a matter of law.

### II. FACTS

This is a sad case. On December 20, 2006, Steven Potter murdered Brad Abercrombie and Jessica Morgan, and then, moments later, took his own life. Jessica had picked up her boyfriend Brad from a working trip, and had just pulled into her driveway when Steven, Jessica's former husband, suddenly came onto the property and shot the couple. The criminal investigation revealed that he had been hiding nearby, and ambushed Jessica and Brad. His motive may have been jealousy, because there is some evidence that Jessica may also have been seeing Steven, and that they had,

in fact, spent the day together either on the day of the murder or the day before, and had gone Christmas shopping together.

There is no evidence that Brad Abercrombie had any contacts with the City. There is no evidence that Brad Abercrombie's name was ever even mentioned to the City. Brad Abercrombie never requested or received an order of protection for himself against Potter. In fact, there is a complete lack of evidence that the City was ever made aware that Brad Abercrombie had any concerns about Potter, or, indeed, that anyone had any concerns that Potter might murder Brad Abercrombie. Rather, the whole of the City's contacts with Morgan and Potter come down to two events, neither of which involved Abercrombie.

The first occurred on October 16, 2006 when both Jessica Morgan and Steven Potter contacted the Benton Police Department regarding an incident occurring at the Lunch Box, located in Benton, Arkansas. Officers Eric Haworth and Kory Bauer were dispatched to investigate. Benton Police Department Incident Report, attached to the Motion for Summary Judgment as Exhibit A; Deposition of Detective Eric Haworth, relevant portions of which are attached to the Motion for Summary Judgment as Exhibit B, p. 17.

Haworth made contact with Jessica Morgan. Morgan was accompanied by her first ex-husband Marvin Lee George, Jr. Morgan told Haworth that she was traveling to Bullocks gas station to get gas when her child started to cry. She stated that she pulled over to the Lunch Box (mere blocks away from the gas station) to get a sippy cup out of the back to stop her child from crying. She allege Potter came out of the Lunch Box, opened the passenger side door, struck George in the face and went back inside. Exhibit A; Exhibit B, pp. 17-18.

Bauer also responded and took the statements of Potter and witnesses Melody Bryan and

Michael and Shannon Pace.  Exhibit A; Exhibit B, pp. 17-22.

Four days prior to the "Lunch Box" incident, Saline County Circuit Clerk records indicate that a protective order in favor of Morgan against Potter.  Defendant's Exhibit 1 to Haworth Deposition, attached to the Motion for Summary Judgment as Exhibit C.  The Circuit Court Clerk record, however, does not show that the protective order was ever served on Potter in order to become a valid order.  Exhibit C;  Exhibit B, p. 57.  At the time of this "Lunch Box" incident, there was nothing in the records to alert the City of Benton that Morgan had a valid order of protection against Potter.  Exhibit B, pp. 30, 32.  When the officers ran the names through ACIC, no valid order of protection came up. Exhibit B, pp. 33, 35, 36

Based on the evidence and witnesses statements, it was Haworth's conclusion that "Ms. Morgan had seen Mr. Potter's truck sitting at the Lunch Box and deliberately stopped behind his truck, got out of the vehicle, and did whatever she had to get out of her vehicle, came outside, asked what was going on.  He was told to fuck off, and then she drove away." Exhibit B. p. 39. It was his belief that Morgan was the instigator. Haworth accordingly instructed Morgan on the procedure for a third party warrant, which was to go to the prosecuting attorney's office and file for the warrant. Exhibit B, p.44.  This was consistent with the policies and procedures of the Department.  Exhibit B. p. 44.

Based on his investigation and conclusion, even had a valid order of protection been reflected in the ACIC report, Haworth's procedure would have remained the same as he did not believe Potter had initiated the contact. Exhibit B. p. 56.

At no point during this "Lunch Box"incident did Brad Abercrombie become involved nor was his name mentioned.  Exhibit B, pp. 54-55.

The second contact occurred on November 7, 2006, when Morgan contacted the Benton Police Department with a complaint that Potter had called her and had driven by her work. Officer Ryan Felton took the report, attempted to make contact with Potter and when he could not, instructed Morgan on the third party warrant procedure. Incident Report, attached to the Motion for Summary Judgment as Exhibit D; Deposition of Haworth, pp. 49–52. There is no evidence that Brad Abercrombie become involved nor was his name mentioned in this incident. Exhibit B, pp. 54-55.

Brad's mother, Jessie Gladson, filed this action pursuant to the provisions of 42 U.S.C. § 1983, alleging that the City violated Brad Abercrombie's constitutional rights by failing to protect Brad from harm by Steven. Plaintiff's theory is essentially that the City should have enforced a protective order that Morgan had against Potter and that had the City arrested Potter for an alleged violation of the protective order, then Potter would not have murdered Ambercrombie. As explained below, this theory is not either factually or legally valid. Summary judgment in favor of the City should be granted.

### III. STANDARD OF REVIEW

Summary judgment is only appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The Court must view the facts, and inferences to be drawn from those facts, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). A moving party is entitled to summary judgment if the nonmoving party has failed to make a showing

sufficient to establish the existence of an element essential to that party's case. *Celotex,* 477 U.S. at 322-3. The Eighth Circuit has held that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Dulany v. Carnahan,* 132 F.3d 1234, 1237 (8th Cir. 1997) [quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)].

## IV. SUBSTANTIVE DUE PROCESS

### a. Substantive Due Process defined

A plaintiff in litigation such as this must establish a violation of substantive due process by demonstrating that a fundamental right was violated, and that the conduct shocks the conscience . . . . whether the alleged conduct shocks the conscience is a question of law. *Akins v. Epperly*, 588 F.3d 1178, 1183 (8th Cir. 2009) [internal citations omitted]. "In a due process challenge to executive action, the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Id*. citing *County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998). *See also Collins v. Harker Heights*, 503 U.S. 115, 128 (1992).

With that framework, Plaintiff's substantive due process allegation is examined in detail.

### b. Defendant's alleged failure to provide Brad Abercrombie with adequate protection against Steven Potter's violence did not violate Abercrombie's rights under the substantive component of the Due Process Clause.

In *DeShaney v. Winnebago County Social Services Department*, 489 U.S. 189 (1989), a child was subjected to multiple beatings by his father, but the social workers for the respondent county Department of Social Services did not act to remove the child, even though they had received multiple complaints that the youngster had been abused. Although the Court recognized certain

limited circumstances in which the Constitution imposes affirmative duties upon States, the Court, speaking through then-Chief Justice Rehnquist in a 6-3 decision, rejected a general requirement of protection, holding:

> Judges and lawyers, like other humans, are moved by natural sympathy in a case like this to find a way for Joshua and his mother to receive adequate compensation for the grievous harm inflicted upon them. But before yielding to that impulse, it is well to remember once again that the harm was inflicted not by the State of Wisconsin, but by Joshua's father. The most that can be said of the state functionaries in this case is that they stood by and did nothing when suspicious circumstances dictated a more active role for them. In defense of them it must also be said that had they moved too soon to take custody of the son away from the father, they would likely have been met with charges of improperly intruding into the parent-child relationship, charges based on the same Due Process Clause that forms the basis for the present charge of failure to provide adequate protection.

*Id.* at 202-3.

The *DeShaney* case involved multiple and severe injuries over a long period of time with multiple visits by and contacts with the State of Wisconsin.[1] However, in the present case, there is not even a single substantiated contact involving potential harm to Brad Abercrombie. Further, the only two contacts occurring in the months before the murder, as described above, were appropriately handled by the City Police Department. *DeShaney* controls the outcome here.

### c. The conduct of the City did not constitute a state-created danger to Brad Abercrombie, and therefore, did not violate Abercrombie's rights under the substantive component of the Due Process Clause.

It is anticipated that Plaintiff will argue that the response of the City in handling Morgan's complaints was insufficient to protect Brad Abercrombie from harm**,** and therefore constituted a

---

[1] The youngster was, tragically, beaten so severely that he suffered permanent brain injury.

state-created danger as discussed in *Hart v. City of Little Rock, Arkansas,* 432 F.3d 801 (8th Cir. 2006). Under that theory, Plaintiff must prove: (1) Brad Abercrombie was a member of a limited, precisely definable group, (2) the Defendant's conduct put Abercrombie at significant risk of serious, immediate, and proximate harm, (3) the risk was obvious or known to Defendant, (4) the Defendant acted recklessly in conscious disregard of the risk, and (5) in total, Defendant's conduct shocks the conscience. *Id* at 805.

The proof fails miserably. First, Brad Abercrombie was not a member of a limited, precisely definable group. He was at best an individual of whom Steven Potter happened to be jealous, and with whom Steven Potter happened to be angry. Deposition of Mike Frost, page 48, Exhibit G to Separate Defendants' motion. Second, the conduct of the Defendant failed to put Abercrombie at risk of immediate and proximate harm. In fact, this murder occurred months after the contacts with the City and, in fact, did not involve Abercrombie at all. Third, there can be no dispute that Defendant did not have any knowledge of the risk involved with respect to Steven Potter to Brad Abercrombie. There is absolutely no evidence that the City was even aware of Brad Abercrmbie's name. Fourth, Defendant did not act recklessly in conscious disregard of the risk, but followed procedures. Its officers followed procedure appropriately. Finally, its conduct hardly shocks the conscience.

The *Hart* Court also made it clear that "mere negligence can never be conscience-shocking and cannot support a claim alleging a violation of substantive due process rights." *Id*. [*citing Terry B. v. Gilkey*, 229 F.3d 680, 684 (8th Cir. 2000)] Finally, the *Hart* Court made it clear that "[T]he constitutional concept of conscience shocking duplicates no traditional category of common-law fault, but rather points clearly away from liability, or clearly toward it, only at the ends of the tort

law's spectrum of culpability, . . . and liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." *Id*. [internal citations omitted] The actionable substantive due process claims involve a level of abuse of power so brutal and offensive that they do not comport with traditional ideas of fair play and decency." *Id*. at 806 *[citing Avalos v. City of Glenwood*, 382 F.3d 792, 800 (2004)].

All of this means that even if the Court is asked to second-guess whether Potter should have been arrested for an alleged violation of Morgan's protective order, or if the officers should have somehow known that Brad Abercrombie, an individual not mentioned in any of the contacts, was in danger, none of that is conscience-shocking. It is, at the very and absolute worst, unfortunate.

## V. THE CONDUCT OF DEFENDANT DID NOT CONSTITUTE A DEPRIVATION OF BRAD ABERCROMBIE'S CONSTITUTIONAL RIGHT OF EQUAL PROTECTION OF THE LAWS.

In her Complaint, Plaintiff sets out a claim which can only be described as bizarre. She contends that Brad Abercrombie was denied his constitutional right of equal protection of the laws under the Fourteenth Amendment. This claim appears to be directed at the County co-Defendants on a theory that Potter was a confidential informant, and as such, was not scrutinized by law enforcement personnel to the extent that he would have been had he not been useful to law enforcement as a confidential informant. Accordingly, Brad Abercrombie fell victim to this unequal treatment. This claim is totally without merit for either the County or the City. The City adopts the co-Defendants' argument to the extent that Plaintiff attempts to make this claim against the City as well.

## VI. THE ISSUE OF CAUSATION IN THIS LITIGATION INVITES "PURE SPECULATION."

The Plaintiff's theories of liability as against the City invites speculation: that if Steven Potter

had been arrested at some point prior to December 20, 2006, the murder-suicide would not have occurred.

This present case is remarkably similar to *Ricketts v. City of Columbia, Missouri*, 36 F.3d 775 (8th Cir. 1994). In that case, the Plaintiffs contended that law enforcement of the city of Columbia maintained a custom and practice of treating domestic abuse cases less seriously than nondomestic cases, and as a result, Kimberly Stephen's husband Sonny harassed and sexually assaulted Kimberly, and murdered her mother, Marge Ricketts. Kimberly had sought and obtained an order of protection. She and her five children had moved in with her parents, Paul and Marge. Sonny constantly and systematically harassed Kimberly, but Kimberly and Sonny moved back in together, only to separate again due to Sonny's abusive conduct. While she and her children were again living with her parents, Sonny entered their home with a shotgun and murdered Marge. He then dragged Kimberly to a nearby wooded area where he sexually assaulted her and then released her one and one-half hours later. Although the Plaintiffs obtained verdicts for the murder of Marge and for sexual assault and harassment of Kimberly, the district court set the verdict aside. The Eighth Circuit Court of Appeals, in a decision by Judge Hansen, affirmed, holding:

> In the case at hand, to find that the injuries caused by Sonny's violent acts of sexual assault and murder would have been avoided had Sonny been arrested for the prior harassment would be an exercise in *pure speculation*. Such speculation cannot establish causation because it is equally plausible that an arrest for the prior harassment might as easily have spawned retaliatory violence from Sonny. [emphasis added]

*Id*. at 780.

This holding is equally applicable to the present case. An alleged failure by the City to arrest Steven Potter cannot be said to have caused the murder of Brad Abercrombie. And, using the logical

9

extension suggested by Judge Hansen, it is equally plausible that such an arrest might just as easily have spawned retaliatory violence by Steven Potter and resulting in the murders occurring earlier.

### VII. STEVEN POTTER'S MURDER OF BRAD ABERCROMBIE WAS AN INTERVENING CAUSE WITH REGARD TO THE CONDUCT OF DEFENDANT.

The doctrine of intervening causation is referred to in the *DeShaney* case, and is specifically mentioned in the above quotation at page 4 of this brief: " . . . before yielding to that impulse, it is well to remember once again that the harm was inflicted not by the State of Wisconsin, but by Joshua's father." *DeShaney* at 203. Similarly, it is well to remember that the death of Brad Abercrombie was inflicted not by the Defendant, but by Steven Potter. The Defendant had no control over the conduct of Steven Potter. In fact, according to the official criminal investigation, Steven Potter and his former wife, Jessica Morgan, apparently had spent the day together, and had gone Christmas shopping immediately prior to the double murder and suicide. Deposition of Mike Frost, page16, Exhibit E, to separate Co-Defendants Motion for Summary Judgment.

Civil rights law under 42 U.S.C. § 1983 often intersects with tort law, and this case is an excellent example of where that intersection is appropriate. *See*, for example, *Crawford-el v. Britton*, 523 U.S. 574 (1998), and *Jefferson v. City of Tarrant*, 522 U.S. 75 (1997), as but two examples of scores of cases in the U.S. Supreme Court alone which describe an action under 42 U.S.C. § 1983 as a "constitutional tort." Arkansas tort law is instructive in this case: When an act or omission occurs after the allegedly actionable conduct of Defendant, and is completely independent of his conduct, the alleged actionable conduct of the Defendant does not constitute proximate causation. The familiar case of *Cowart v. Casey Jones, Contractor, Inc.,* 250 Ark. 881, 467 S.W.2d 710 (1971), teaches as much. In that case, the Court held that the actions of Plaintiff's decedents' employer in

10

permitting operation of heavy equipment without safety devices was an intervening cause in the death of Plaintiff's decedent. 250 Ark. at 885. The present case is similar. Regardless of any act or omission on the part of the City, and completely independent of any such act or omission, Steven Potter murdered Brad Abercrombie and Jessica Morgan, and then took his own life. His conduct constituted intervening causation.[2]

## VIII. THIS ACTION IS BARRED BY THE DOCTRINE OF QUALIFIED IMMUNITY.

The historic case of *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), established the defense of qualified immunity in cases brought under 42 U.S.C. § 1983. Since that time, all of the federal circuits, including the Eighth Circuit, have developed case law closely following and implementing *Harlow*, which specifically holds that government officials "are shielded from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id*. at 818. Building on that, the Eighth Circuit has developed a three-pronged test:

> To withstand the application of qualified immunity, a Plaintiff must (1) assert a violation of a constitutional or statutory right; (2) that right must have been clearly established at the time of the violation; and (3) given the facts most favorable to the Plaintiff, there must be no genuine issue of material fact as to whether a reasonable official would have known that the alleged action indeed violated that right.

*Liebe v. Norton*, 157 F.3d 574, 577 (8th Cir. 1998). See also *Gregoire v. Class*, 236 F.3d 413, 417 (2000); *Goff v. Bise*, 173 F.3d 1068, 1072 (1999); *Yowell v. Combs*, 89 F.3d 542, 544 (8th Cir. 1996). Plaintiff fails to meet the requirements of this three-pronged test.

---

[2]The concept is sometimes referred to as superceding cause. *See generally,* HENRY WOODS AND BETH DEERE, COMPARATIVE FAULT 107 (3d ed. 1996).

First, the Plaintiff has failed to assert a violation of a constitutional right. *DeShaney v. Winnebago County Social Services Department*, 489 U.S. 189 (1989), makes it abundantly clear that there is no constitutional right to individual protection. *Id*. at 202-203.

Second, not only is there no such constitutional right, but it necessarily follows that such a right is not clearly established. Further, even if *Hart v. City of Little Rock, Arkansas,* 432 F.3d 801 ( 8th Cir. 2006), defines a new cause of action for creation of a dangerous condition, that cause of action is not clearly established. In fact, although that cause of action was first enunciated in *Hart*, the Plaintiffs lost. *Hart* has been cited in the Eighth Circuit only twice and the Plaintiffs also lost in those cases (both with dissimilar facts).[3]

Third, it necessarily follows also that if the complaint does not articulate a constitutional right (or if it does, it is not clearly established), then there can be no issue as to whether the City would have even known that their alleged action indeed violated such a right.

In summary, Plaintiff has not alleged a deprivation of a constitutional or statutory right, and even if she has, it is not one that was clearly established on December 20, 2006. It necessarily follows, therefore, that it is not unreasonable for the Defendant not to have known of a nonexistent or unestablished constitutional deprivation. For this reason alone, therefore, summary judgment should be granted to the Defendant.

## IX. CONCLUSION

For the foregoing reasons, the Defendant should be awarded summary judgment.

---

[3] *James ex rel. James v. Friend*, 458 F.3d 726 (8th Cir. 2006); *Skokos v. Rhoades*, 440 F.3d 957 (8th Cir. 2006).

Respectfully submitted,

Frederick S. Ursery, AR Bar No. 67055
Jamie Huffman Jones, AR Bar No. 2003125
FRIDAY ELDREDGE & CLARK
400 West Capitol, Suite 2000
Little Rock, AR  72201-3522
(501) 370-1430 - Telephone
(501) 244-5340  Facsimile
jjones@fridayfirm.com - Email

By: /s/ Jamie Huffman Jones
Jamie Huffman Jones


AND
Brent Houston
City Attorney
1230 Ferguson Drive
P.O. Box 1500
Benton, Arkansas
72018
(501) 315-3355
bhouston@jyh-law.com

CERTIFICATE OF SERVICE

   I, Jamie Huffman Jones, hereby certify that the foregoing pleading has been filed with the Clerk of Court on this 19th day of April, 2010, using the CM/ECF filing system and that the Clerk of Court shall serve a copy upon the following:

Edward G. Adcock  egalaw@aol.com

George D. Ellis  gellisinbenton@swbell.net, rbmalone@hotmail.com

            <u>/s/ Jamie Huffman Jones</u>
            FRIDAY ELDREDGE & CLARK
            400 West Capitol, Suite 2000
            Little Rock, AR  72201-3522
            (501) 370-1430 - Telephone
            (501) 244-5340  Facsimile
            jjones@fridayfirm.com - Email